Dear Judge Roberts:
You have requested an opinion from the Attorney General, on behalf of the Recreation and Park Commission for the Parish of East Baton Rouge (BREC), relative to the provisions of a contract of cash sale executed on January 23, 1990, between BREC and the Santa Maria Partnership in Commendam (Santa Maria). Pursuant to the contract, BREC purchased 33.786 acres of land, as well as various non-exclusive servitudes of access and passage, all of which are part and parcel of the Santa Maria Golf Course property. BREC, under separate act of sale, previously acquired the major portion of the golf course acreage — the 33.786 acres and servitudes representing the residual properties not included in the original purchase.
The act of sale to acquire the 33.786 acres provides that the consideration for the property conveyed is payment of the sum of $800,000 cash, one-half the cost of the permanent entrance (i.e., public access road), not to exceed the sum of $200,000, to be installed by Santa Maria or its successors in title, and the total cost for the installation of a 100 foot permanent grade crossing traversing tracts owned by the Kansas City Southern Railroad. The cost of the grade crossing has been estimated to be approximately $100,000. The permanent entrance road will be a public road constructed in conformity with the requirements of, and located on property dedicated to, the City/Parish of East Baton Rouge. The road and grade crossing will afford the general public access to the golf course and its related facilities (i.e. clubhouse, etc.).
The remaining property adjacent to the golf course was sold by Santa Maria to Charles J. Cole, Jr., owner of Cole Development Company, Inc. (Cole). Cole contracted with Barber Brothers Contracting Company, Inc. (Barber Brothers), the lowest of four bidders, to construct streets, drainage, sanitary sewer, and sidewalks, including the entrance road and drainage appurtenant thereto. You state that construction costs associated with the entrance road may be in excess of $400,000. BREC expects to receive invoices from Cole for reimbursement for its $200,000 share in the very near future.
By letter to you dated October 12, 1992, BREC has advised that, due to safety considerations, the railroad will not permit the construction of a grade crossing of its tracks, but rather will require a bridge or tunnel, the cost of which will exceed that of the grade crossing stipulated in the contract. Your recommendation to BREC is that they are not obligated for any cost over and above those attributable to a grade crossing.
While it is your opinion that BREC may carry out its obligations under the act of cash sale relative to the $200,000 reimbursement for access road construction, and reimbursement for the cost of the grade crossing, you have requested our review and opinion on same.
The constitutional norm for the lawful use of public funds and property is found in La. Const. Art. VII, Section 14 (1974). Paragraph (A) generally prohibits the loan, pledge, or donation of public funds. Exceptions to this prohibition are found in Paragraph (B), all of which are inapplicable to the case at hand.
Paragraph (C) of Section 14 authorizes the state and its political subdivisions (e.g., BREC) to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private corporations, or individuals. However, Paragraph (C) supplements the prohibition against donations in Art. VII, Section 14 (A). It does not create an exemption or exception from the general constitutional norm. The Louisiana Supreme Court has ruled that all cooperative endeavors authorized by Art. VII, Section 14 (C), must also meet the general standard for the non-gratuitous alienation of public funds or property established by Art. VII, Section 14 (A). See City of Port Allen v. La. Risk Management, et al, 439 So.2d 399
(La. 1983).
Despite the authorization of cooperative endeavors, Section 14 (A) is, nevertheless, violated whenever a political subdivision seeks to give up something of value in the absence of a legal obligation to do so. In other words, only if the transfer of public funds is required by a valid legal obligation will it be considered a constitutionally sanctioned cooperative endeavor.
The requirement of a legal obligation to expend public funds or to use public equipment and labor is the threshold, but not the only predicate for the constitutionality of the expenditure. The expenditure must also be for a public purpose and create a public benefit proportionate to its cost. See Opinions of the Attorney General Nos. 90-651 and 90-392. A public purpose and benefit are presumed where the underlying legal obligation for the expenditure is created by the constitution, a statute, or an ordinance.
The powers and duties of BREC are set forth in LSA-R.S.33:4570.3. It provides, in pertinent part, the following:
 "A. The commission shall have perpetual existence and shall have the right and power to incur debts and contract obligations; to sue and be sued; to acquire by purchase, donation, expropriation, and otherwise, from other political entities or from any other source, money and property, movable and immovable, tangible and intangible, and to own, administer, alienate, and otherwise dispose of the said money and property; to contract generally; to adopt an official seal; and generally to have and enjoy all of the rights, powers, and immunities incident to public corporations engaged in public recreational and public park purposes. The powers and duties of the commission shall be inclusive of the right to own and acquire, and to develop and administer, lands for public parks, and other properties and improvements, movable and immovable, tangible and intangible, as well as additional rights, leases, concessions, and privileges for public recreational and park purposes generally. The commission is vested with full power to adopt and promulgate rules and regulations within the scope of this Section to apply to its own governmental functions, and to control and regulate the public recreational and park facilities under its jurisdiction." (Emphasis added.)
As can be seen from the above, BREC is vested with broad and sweeping authority to develop and administer lands for public parks and other recreational facilities, and to contract, generally, for said purposes. Clearly envisioned within the scope of BREC's statutory duties is the authority to contract for the construction of entrance or access roads and grade crossings necessary to afford the general public access to these public recreational facilities. We, therefore, conclude that the act of cash sale containing the stipulations relative to BREC's payment for the permanent access road and grade crossing is a valid legal obligation authorized by its statutory duty to contract for the development of public recreational facilities like Santa Maria Golf Course.
We further conclude that the expenditures, in question, serve a public purpose — i.e., that of affording the general public access to the Santa Maria Golf Course and its related facilities. The remaining issue is whether BREC's performance of the legal obligation creates a benefit for the public proportionate to the cost involved.
The expenditures will make it possible for the general public of the State of Louisiana to utilize one of the finest public golf courses in this state for a relatively nominal fee. While this benefit is somewhat intangible, it is, nevertheless, substantive, and one of the important contributions which government can make to the quality of life of its citizens. We therefore conclude that the financial obligations assumed by BREC relating to the access road and grade crossing are not so disproportionate to the public benefit to be realized so as to render them unconstitutional.
As noted above, the construction performed by Barber Brothers involved not only the permanent entrance road and related drainage, but other streets, sidewalks and drainage facilities. In light of this fact, invoices submitted to BREC for payment should represent costs related solely to the access road. Any unrelated payments would obviously violate the terms of the contract, as well as La. Const. Art. VII, Section 14 (A).
We also concur with your opinion that BREC's obligation for the railroad crossing is limited to the cost of the 100 foot grade crossing stipulated in the contract. Additional costs necessitated by the construction of a bridge or tunnel are not BREC's responsibility. We recommend that the appropriate cost and payment be based on reasonable estimates obtained by BREC.
In summary, this office is of the opinion that the payments to be made by BREC under the terms, conditions, and obligations of the contract of cash sale with Santa Maria are constitutional under Art. VII, Section 14 (A) and (C).
Trusting this to be of sufficient information, I remain
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH, III:lbw-0013R